GEE v. HUMPHRIES.

1. ADMINISTRATOR.—INTEREST—ACCOUNTING.—The administrator in this case held to account for interest on the partnership stock of goods taken by him at appraised value.   *Divided Court.*
2. IBID.—ACCOUNTING.—Administrator in this case held not to account for accounts on firm books against tenants of deceased partner.
3. ACCOUNTING—PARTNERSHIP — ADMINISTRATOR — SUBROGATION — INTEREST.—Where a partnership debt is secured by bond and mortgage of partner, and after his death is paid out of his individual property, his estate is subrogated to the rights of such creditor in partnership assets, and should be allowed interest on such payments.   *Divided Court.*
4. IBID.—ADMINISTRATOR—INTEREST.—Manner of calculating interest against administrator in this case stated.

Before EARLE, J., Union, December, 1895.   Modified.

Action by R. T. Gee, as administrator of M. M. Humphries (his former partner in business), against the heirs at law and individual creditors of the intestate, for sale of land in aid of assets and an accounting by himself as administrator.   The Circuit decree is as follows:

The plaintiff and one M. M. Humphries were formerly copartners in business as merchants, under the firm name of Gee & Humphries, for a number of years and until the death of M. M. Humphries, which occurred some time in the year 1881.   Soon thereafter the plaintiff was duly appointed administrator of the estate of his deceased partner, and upon his petition the judge of probate of said county made an order of date January 10, 1883, by which he directed that the plaintiff "have leave to retain the stock of goods and merchandise of said Gee & Humphries at the appraisement as recommended by the appraisers, and that the petitioner account with the firm of Gee & Humphries in his statement of their partnership transactions for said stock of goods at the value of $6,064.75."   The plaintiff thereupon retained the possession of said stock of goods, which he already had as the survivor of said firm, and ap-

propriated the same to his own use in the mercantile busi-
ness, which he thereafter conducted for his individual profit
and benefit, at the old stand. On or about the 6th day of
May, 1882, the plaintiff commenced this action to marshal
the assets and to sell the lands of his intestate for the pay-
ment of debts. The creditors were duly called in to estab-
lish their claims before the master, and he was also directed
to take the account of the plaintiff as said administrator.
Upon the testimony taken by the master on September 21,
1886, he reported that the sum due at that time by the ad-
ministrator was $1,349.35. This report was confirmed by
order of this Court, dated October 13, 1886. Subsequently
a motion was made by certain of the parties to this cause
to set aside said order confirming said report, upon the
ground that they had no notice of said reference of Septem-
ber 21, 1886. This motion was refused, and upon appeal
to the Supreme Court the order refusing the same was sus-
tained. The Supreme Court held, however, "that when the
administrator accounts as such, he will be chargeable with
the balance so found in his hands as survivor, and at such
accounting these appellants may raise the point whether
they are bound by the balance heretofore found." 28 S. C.,
606. Among the claims so established before the master
was the claim of Salinas & Son. These were creditors of
the firm of Gee & Humphries, but M. M. Humphries, some
time before his death, executed and delivered to them his
personal bond for $6,000, secured by his mortgage of real
estate, his individual property, to secure the payment of
debts due by said firm. This real estate was sold by order
of the Court in this case, and out of the proceeds of sale the
said Salinas & Son were paid the sum of $4,055.35 to sat-
isfy said mortgage. References were held herein by the
former master from time to time, until finally, the term of
office of said master having expired, and his successor, the
present master, being disqualified, C. P. Sanders, Esq., was
appointed special master herein by order of this Court. He
filed a carefully prepared report on January 12, 1895. The

plaintiff, and also the creditors who were called in and have proved their claims, have filed numerous exceptions to said report; and the cause came on to be heard before me at the last term of said Court, upon the said report and exceptions.

I have carefully considered the plaintiff's exceptions in connection with the testimony, and I find no error in the report as pointed out thereby, except, possibly, exception 6, which assigns error "in charging the plaintiff as survivor, with interest on annual balances of cash on hand as survivor." These exceptions are, therefore, overruled, except the sixth, which is sustained. The survivor could not conveniently wind up the partnership affairs of Gee & Humphries without keeping some money on hand, however diligent he might have been. He should not be charged interest on any money received by him as survivor, or on annual balances in his hands as such survivor, until he had received enough to pay the firm debts, which it is admitted was on January 1, 1887; for it does not appear that prior to that time he kept unnecessarily firm money on hand and allowed firm debts to draw interest, or that he used the money for his own profit and benefit until after the said first day of January, 1887. But after said date it seems to be just that he should be required to pay interest on annual balances.

I will now consider the exceptions filed by the creditors. Exceptions 1, 2, 3, and 4 are sustained. It appears from the testimony that other creditors are contesting besides those mentioned by the special master. There appears to be no evidence to sustain that finding that all of the creditors knew of said reference or were represented thereat, and that Goss was personally present at said reference. The evidence seems to establish the contrary. Mr. J. C. Wallace, attorney for Goss and Lawson, had appeared and proved claims, had taken part in the proceedings, and was recognixed as one of the attorneys in the cause. Mr. Steedman, at the time of said reference, represented Mrs. Mattie Scaife, and he was also recognized as one of the attorneys herein.

And yet it appears that no one was present, had notice of or was represented at said reference, held on September 21, 1886, except the plaintiff and Mrs. Bailey. All creditors who came in and proved their claims became parties to this cause, and as such were entitled to notice of each step to be taken therein; otherwise they are not bound. *Wardlaw* v. *Eskein*, 21 S. C., 359–61; *Wright* v. *Herlong*, 16 S. C., 620; 2 Hill Chan., 84. As to exceptions 5, 7, 9, and 10, the testimony of R. T. Gee in the matter excepted to is incompetent; and these creditors not having been present at or notified of the reference when this testimony was offered, had the right to object to its being considered by the master. It should have been disregarded. The creditors are not bound by the report and order confirming it. It was *ex parte*, based upon incompetent testimony and not sustained by the evidence. These exceptions are, therefore, sustained.

Exceptions 11, 12, 13, and 14 make the point that the special master erred in holding that the estate of M. M. Humphries was not entitled to interest on $4,055.33, the amount paid Salinas & Son out of proceeds of sale of his individual property to satisfy firm debts. There is much conflict of authority upon the question whether or not one party is entitled to interest on capital advanced over and above his proper proportion to the partnership. Vice Chancellor Sandford, of New York, after reviewing and discussing all the decisions which had been rendered at that time on this point, reached the conclusion that in taking an account between partners, the question of whether interest should be allowed or disallowed must depend upon the circumstances of each particular case. *Beachman* v. *Eskford*, 2 Sand. Ch., 116. And this has been accepted as the true principle in the following cases: Gyers Appeal, 62 sec., St. 72; *Buckingham* v. *Lualum*, 29 N. J. Eq., 350; *Johnstone* v. *Hartshore*, 52 N. Y., 173. In Gyer's Appeal, *supra*, Judge Sharswood, referring to the opinion expressed by Vice Chancellor Sandford, says: "This seems to be much the safest principle to adopt in view of the confidential relation of

the parties and the variety and complication of such accounts. No unbending rule could be laid down which would not, in particular instances, work great injustice." But admitting that the special master has stated the rule correctly as to transactions *inter vivos* and before the dissolution of partnership, this rule should not be applied under the facts and circumstances of this case. Here the partnership had been dissolved by the death of Humphries; the partnership effects were amply sufficient to pay partnership debts, and yet the plaintiff, both survivor and administrator of the estate of his deceased partner, permitted the property of the individual estate of latter to be forced to sale to pay firm debts. Under the circumstances, I hold that the estate of M. M. Humphries, deceased, is entitled to interest at the rate of seven per cent. per annum on said sum of $4,055.33 from the date of payment. These exceptions are, therefore, to this extent sustained.

The 18th and 19th exceptions make the point, that the special master erred in not finding and reporting: First, that R. T. Gee should be charged interest on the cash purchase of the stock of goods until the date of the report; and second, that he should be charged interest on annual balances in his hands as survivor from January 1, 1887, to date of report. The plaintiff was permitted, upon his petition to the probate court, to retain the stock of goods at the appraised valuation of $6,064.75, and the testimony shows that he appropriated the same to his own use, and continued in his own name, and for his own benefit and profit, the mercantile business of the late firm of Gee & Humphries. The proceedings in the probate court which resulted in the order allowing him to retain said stock of goods seems to have been irregular, but he will not be permitted to say that said proceedings did not vest him with title to the goods. He took them at the appraised valuation and appropriated them to his own use. If he had sold them as survivor or as administrator, the proceeds of sale would have been immediately applicable to the payment of

17–49

the debts of the partnership, or if there were no debts, one-half of such proceeds of sale should have been paid over to the estate of his deceased partner. If he had appropriated the proceeds of sale, he would have been chargeable with interest on same; and it can make no difference that, instead of selling the goods as survivor or administrator, he professed to keep them for his own purposes. Interest should always be allowed when, either by express contract or by implication, it is the duty of a party to pay over any certain sum of money which may be due, without any previous demand. I therefore hold, that when Mr. Gee received the stock of goods and appropriated the same under the said order of the judge of probate, that it was his duty to pay over to himself, as administrator of his deceased partner, one-half of the appraised value of said goods, and that he must now be charged with said appraised value, together with interest on the same. As the Court said in *Simpson v. Feltz*, 1 McC. Chan., 213: "When one keeps the funds of another in his hands, the presumption is that he does so for the purpose of profit, and he must, therefore, pay interest on it. Even if a partner retains funds of his copartner in his hands, he must pay interest." These exceptions are, therefore, sustained. I have already held that interest should be charged on annual balances after January 1, 1887, as claimed by exception 9. The balance on January 1 of each year, as taken from the cash book of Gee & Humphries, appears in statement.

Exceptions 20 and 21 make the point that the special master erred in charging M. M. Humphries with $824.93 of accounts on the books against his tenants. The testimony of R. T. Gee, at the reference of September 21, 1886, as to this matter, was incompetent under Code, sec. 400, and cannot be considered against the creditors now objecting, and who were not notified of said reference. There is no other testimony which shows that Humphries was liable for these accounts. These exceptions are sustained upon the ground that there is no evidence to sustain the charges.

It was urged in the argument for the plaintiff, that the order of this Court, of date March 12, 1891, appointing the special master, validated and rendered binding the said testimony of R. T. Gee against all parties, whether they were otherwise bound by said testimony or not. I do not concur in this view. The words of the order are: "Ordered further, that the testimony heretofore taken before the master be used in the cause." This provision of the order was unnecessary, as what it directs to be done would have been done if it had not been expressly so ordered. *Cook* v. *Pennington*, 9 S. C., 83. It is evident that the purpose of the Court in making this order was only to provide against the trouble incident to taking the testimony *de novo*, if any one had supposed that it was necessary to do so; and to remove any doubt on that point, and not to pass upon the question of competency of testimony which had been taken. This being my construction of said order, exception 20 is sustained. Exception 23 is also sustained. The cost and expenses should not be paid "out of the fund," but one-half thereof should be paid by R. T. Gee, and half by the estate of M. M. Humphries. The other exceptions are overruled. According to the principles herein announced, the account is stated and hereunto annexed, showing that the plaintiff, R. T. Gee, is indebted to the estate of his intestate in the sum of $5,472.62. The account is made up to November 1, 1895.

It is, therefore, ordered, adjudged, and decreed, that the plaintiff is indebted to the estate of his said intestate in the sum of $5,472.62, and that he pay the same into this Court, together with interest thereon from November 1, 1885; and that he also pay one-half of the cost and expenses of this case, to be taxed by clerk of this Court. It is further ordered, that the master take into his possession the store fixtures of the said Gee & Humphries, of every description, and, after giving due legal notice of time and place of sale according to law, sell the same at public auction, for cash, before the court house door at Union, S. C., on saleday in

February, 1896, or some convenient saleday thereafter.    It
is further ordered, that the master also sell the real estate
of the said firm of Gee & Humphries, at public auction,
before the court house door at Union, S. C., on saleday in
February, 1896, or some convenient saleday thereafter, after
giving due public notice of the time and place of such sale
according to law and the practice of this Court, upon the
term of one-half cash, the balance on a credit of one year,
with interest thereon from day of sale, secured by the bond
of the purchaser and a mortgage of the premises sold; that
after paying his fees and the expenses of said sales out of
the proceeds thereof, he hold the balance thereof subject to
the order of this Court, and that he make full report of this
proceeding hereunder, with all convenient speed.    It is
further ordered, that R. T. Gee have credit for the sum of
$171.84, the amount paid by him to D. A. Townsend, at-
torney, or any amount that may be due in distribution to
Mrs. Ann Bailey and Mrs. Mattie Scaife, who were repre-
sented by him at the time of said payment.

From this decree the plaintiff appeals.

*Messrs. Munro & Munro,* for appellant.

*Mr. J. Clough Wallace,* contra, cites: *On points decided:*
16 S. C., 430; 20 S. C., 381; 4 Rich. Eq., 103; 31 S. C.,
537; 12 R., 183; 6 S. C., 14.

April 20, 1897. The opinion of the Court was delivered by

MR. JUSTICE GARY.    The facts of this case are fully
stated in the decree of his Honor, Judge Earle, and as the
decree will be incorporated in the report of the case, it is
not necessary to state them in this opinion.    Although the
exceptions are quite numerous, they raise but three ques-
tions, as was said by appellant's attorney during the argu-
ment before this Court.

The first question to be considered is, whether there was
error on the part of the Circuit Judge in deciding that R.

T. Gee is chargeable with interest on the appraised value of the stock of goods which he purchased under the proceedings in the probate court, from the time of said purchase. When Gee purchased the goods as aforesaid, he used them in his individual business; as owner in his individual right he was entitled to all the profits; he did not expend the purchase money for the benefit of the partnership which had existed between him and Humphries, and it is, therefore, but equitable that he should be charged with interest. The exceptions raising this question are overruled.

The second question is, whether the Circuit Judge erred in refusing to charge Humphries' estate with the accounts on the partnership books against his tenants. This Court is satisfied with the reasons stated by the Circuit Judge for so doing, and the exceptions raising this question are overruled.

The third question is, whether there was error in charging R. T. Gee, as administrator of Humphries' estate, with interest on the sums paid out of Humphries' estate in extinguishing the debt due A. J. Salinas & Son by the partnership. The claim of A. J. Salinas & Son was against the partnership, but was secured by the personal bond of Humphries and a mortgage of his real estate. When the claim was paid out of his individual property, his estate became subrogated to the rights of A. J. Salinas & Son as against the *partnership* assets. Interest should be allowed on said payments. The exceptions raising this question are sustained to the extent that the Circuit Judge was in error in charging R. T. Gee, as administrator, with the whole of said interest.

Having reached this conclusion, it is necessary for this Court to state the manner in which the interest is to be calculated against the plaintiff. The case shows that Gee commenced proceedings shortly after the death of Humphries to marshal the assets and for an accounting by him as administrator. The accounting

between Gee and the estate of Humphries could not take place until the settlement of the partnership indebtedness, which his Honor says was on 1st January, 1887. He uses this language in his decree: "He should not be charged interest on any money received by him as survivor, or on annual balances in his hands as such survivor, until he had received enough to pay the firm debts, which, it was admitted, was on January 1, 1887; for it does not appear that prior to that time he kept unnecessarily firm money on hand and allowed firm debts to draw interest, or that he used the money for his own profit and benefit until after the said first day of January, 1887." Interest should be calculated on the appraised value of the goods bought by R. T. Gee, as aforesaid, up to the first of January, 1887. Interest should, also, be calculated on the sums paid in extinguishing the debt due A. J. Salinas & Son up to that date; but as the estate of Humphries became subrogated to the rights of A. J. Salinas & Son as against the *partnership* assets, the effect of allowing interest on the claim against the partnership assets is to make R. T. Gee chargeable, as the administrator of Humphries' estate, with only one-half of the interest then due. The indebtedness of Humphries to the firm should then (1st January, 1887,) be deducted from the amount due his estate.

This·Court agrees with the Circuit Judge that interest should be charged on annual balances after the first of January, 1887.

It is the judgment of this Court, that the judgment of the Circuit Court be modified, in accordance with the principles herein stated.

MR. JUSTICE JONES concurs in the above opinion.

MR. CHIEF JUSTICE McIVER. Being unable to concur in all of the conclusions reached by Mr. Justice Gary, I propose to state briefly, without elaborating the argument, the points upon which I differ with him. 1st. It seems to me that, under the order of his Honor, Judge Witherspoon,

bearing date 12th of March, 1891, to which no exception was taken, all parties were precluded from making any objection to the competency of the testimony taken by the master under previous orders in the cause. For that order distinctly declares "that the testimony taken before the master be used in the cause." That order having been acquiesced in by all parties, is conclusive and binding upon all the parties. If it was expected or desired to raise any question as to the competency of any of the testimony so taken, it was necessary for the parties so desiring to have *then* raised the question as to the competency of some or all of such testimony, by insisting upon the insertion of the words, "subject to any objection as to its competency," or some such qualifying words; and not having done so, either by noting an exception to the order or otherwise, they must now be regarded as having assented to the use of such testimony upon the reference provided for by said order. 2d. I have grave doubts whether interest should have been allowed one partner against the other, until the partnership debts were settled, for it was then, and then only, that it could be definitely ascertained what amount was due by one partner to the other on account of the partnership affairs. I do not mean to say that *in no case* should interest be charged against the survivor of a partnership on amounts received by a survivor on account of partnership assets, for there may be cases in which the survivor has been guilty of such unwarrantable delay in settling the partnership debts as would justify a charge of interest; but I see nothing in this case which would either call for or justify the application of such exceptional rule. It seems to me, therefore, that the proper mode of settlement is to charge no interest until the 1st day of January, 1887, when it seems to be agreed that all of the partnership debts were paid, then ascertain the amount received by plaintiff, both from the partnership assets and from the estate of his deceased copartner, including therein the amount paid on the Salinas debt, from the proceeds of the sales of the deceased

partner's individual property in excess of the amount received by the deceased partner, and let such excess bear interest from the 1st day of January, 1887, or rather, let the amount of such excess be charged to the plaintiff in his account as administrator, to be accounted for under the rules governing such accounting.

But if I am wrong in the foregoing views, then I do not think that the plaintiff should be charged with interest, either upon the whole or one-half of the appraised value of the stock of goods taken by him at such appraised value; but if interest is to be charged at all, the interest-bearing amount should be determined by ascertaining the amount of the excess which plaintiff had, up to that time, received from the partnership assets over and above the amount which had been received by the other partner, and that such excess should be the interest-bearing amount. So, too, I do not think that the plaintiff should be charged with interest on the amount paid on the Salinas debt; but if interest is to be charged at all, it should be only upon the amount of the excess received by plaintiff over and above the amount received by the other partner, after deducting from such last mentioned amount the amount paid on the Salinas debt from the proceeds of the sale of the individual property of Humphries. But, in my judgment, as I have said above, I do not think that plaintiff is chargeable at all with interest until after the 1st of January, 1887.

I think, therefore, that the judgment of the Circuit Court, in so far as it conflicts with the foregoing views, should be reversed, and the case remanded to that Court to be determined upon the principles herein announced.

Inasmuch as the Court is equally divided as to the foregoing views, no judgment in accordance therewith can be rendered, and, therefore, I think that the judgment of the Circuit Court should, at least, be modified in accordance with the views presented by Mr. Justice Gary in his opinion, which is concurred in by Mr. Justice Jones. Under these circumstances, the judgment of this Court is, that the judg-

ment of the Circuit Court be modified as directed in the opinion of Mr. Justice Gary, and that the case be remanded to that Court, with instructions to carry into effect such modification.

MR. JUSTICE POPE concurs in the above opinion.